**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Joshua Edward Stanton (#M-55448), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 14 C 9974 |
| | ) | |
| Tom Dart, | ) | Judge John Z. Lee |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Joshua Edward Stanton, an Illinois prisoner, brought this action under 42 U.S.C. § 1983 concerning the conditions under which he was detained at Cook County Jail. By order dated January 13, 2016, the Court allowed Plaintiff's amended complaint to proceed against Cook County Sheriff Thomas Dart because the amended complaint alleged potentially systemic problems at the Jail. Before the Court is Defendant Dart's motion for summary judgment. For the reasons discussed below, Defendant's motion is granted in part and denied in part.

## Northern District of Illinois Local Rule 56.1

Northern District of Illinois Local Rule ("LR") 56.1 governs the procedures for filing and responding to motions for summary judgment in this Court. Under LR 56.1(a)(3), the moving party must provide "a statement of material facts as to which the moving party contends there is no genuine issue" for trial. Those material facts are deemed admitted "unless controverted by the statement of the opposing party." LR 56.1(b)(3).

To defeat summary judgment, the opposing party must file "a response to each numbered paragraph in the moving party's statement" of fact. LR 56.1(b)(3)(B). In the case of any disagreement, the opposing party must reference affidavits, parts of the record, and other materials

that support his or her stance. *Id.* "[M]ere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz,* 321 F.3d 680, 683 (7th Cir. 2003). If the opposing party's response provides only extraneous or argumentative information, the response will not constitute a proper denial of the fact, and the fact will be admitted. *See Graziano v. Vill. of Oak Park,* 401 F. Supp. 2d 918, 936–37 (N.D. Ill. 2005).

If the opposing party fails to comply with Rule 56.1, "its additional facts may be ignored, and the properly supported facts asserted in the moving party's submissions are deemed admitted." *Gbur v. City of Harvey,* 835 F. Supp. 2d 600, 607 (N.D. Ill. 2011). Substantial compliance is not enough; parties must strictly comply with the rule. *See id.* at 606–07*; Ammons v. Aramark Uniform Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004). Furthermore, the requirements of LR 56.1 apply equally to *pro se* plaintiffs. *See Greer v. Bd. of Educ. of City of Chicago*, 267 F.3d 723, 727 (7th Cir. 2001); *Cady v. Sheahan*, 467 F.3d 1057, 1061 (7th Cir. 2006) ("[E]ven *pro se* litigants must follow rules of civil procedure.").

Consistent with the Local Rules, Defendant filed a statement of uncontested material facts along with his motion for summary judgment. *See* Def.'s LR 56.1(a)(3) Stmt. ("Def.'s LR 56.1"), ECF No. 37. Each relevant assertion of fact in the Local Rule 56.1(a)(3) statement is supported by evidentiary material in the record. Also consistent with the Local Rules, Defendant filed and served on Plaintiff a Local Rule 56.2 Notice, which explained in detail the requirements of Local Rule 56.1. *See* Def.'s LR 56.2 Notice, ECF No. 39.

In response, Plaintiff filed a thirteen-page document. Pl.'s Resp. to Summ. J. ("Pl.'s Resp."), ECF No. 42. Plaintiff's response is largely argumentative and does not include a response to Defendant's statement of facts that complies with LR 56.1(b)(3)(A) or (B). Plaintiff

2

also did not file a statement of additional facts as required by LR 56.1(b)(3)(C). Accordingly, Defendant's facts are admitted. *See* L.R. 56.1(b)(3)(C) ("All material facts set forth in the statement required of the moving party will be deemed to be admitted unless controverted by the statement of the opposing party."); *Keeton v. Morningstar, Inc.*, 667 F.3d 877, 880 (7th Cir. 2012).

With the above standards in mind, the Court turns to the facts of this case. The Court incorporates relevant facts from Plaintiff's response and his deposition when necessary for context, as long as the facts would be admissible at trial. *See, e.g., Holm v. Vill. of Coal City*, 345 F. App'x 187, 190 (7th Cir. 2009) (considering record evidence rather than party's characterization of evidence).

## **Undisputed Facts**

Plaintiff Joshua Stanton was incarcerated at Cook County Jail from July 23, 2013, to sometime after April 2015. Def.'s LR 56.1 ¶¶ 3, 4. His complaints about living conditions at the Jail begin in October 2013 and concern three different Divisions. *See id.* ¶¶ 4, 22, 30.

From October 2013 to January 2014, Plaintiff was housed in Division 5, tier 2J. Def.'s LR 56.1 ¶ 22. Plaintiff saw mice throughout the tier and, on any given day, he saw between five and ten mice. *Id.* ¶¶ 23, 24. He explained at his deposition that mice were living inside his cell door and that there were two or three other doors with nests. Def.'s LR 56.1(a)(3) stmt., Ex. A (hereafter "Pl.'s Dep. at"), 43:21–44:15. He declined to estimate the total number of mice living in his door or on his housing tier but explained that the mice "c[a]me out in groups" from the door, they would get into his bag, and they ran in "packs all throughout the deck." *Id.* at 44:19–46:1. Plaintiff, however, was not bitten by a mouse in Division 5 or in any other Division. Def.'s LR 56.1 ¶¶ 25, 33.

Plaintiff also testified that there was a "typical normal lack" of sanitation in Division 5. Pl.'s Dep. at 48:21. He acknowledged that detainees were responsible for cleaning their cells, Def.'s LR 56.1 ¶ 26, but explained that they were not provided the "proper utensils," such as a scrub brush or disinfectant, Pl.'s Dep. at 49:6–20. Cleaning supplies also were not distributed often enough. Def.'s LR 56.1 ¶ 27. Plaintiff therefore had to use his own soap to clean his cell. *Id.* ¶ 28. He recalled one occasion, however, when an officer distributed bleach to clean the floor and the toilet, *id.* ¶ 29, but he could not recall if that occurred in Division 5 or Division 6, Pl.'s Dep. at 51:13–52:2.

In January 2014, Plaintiff was moved to Division 1, tier A2, where he remained for about ten months. Def.'s LR 56.1 ¶ 30. Plaintiff testified at his deposition that there were rodents throughout Division 1. *Id.* ¶ 31. He explained:

> [Y]ou got them coming in the cell where we sleeping at, and they leaving rat droppings or mice droppings, urine all over the floor, little black pellets everywhere, all under the bed. You get up in the morning. Black pellets everywhere in the cell . . . . I leave my bowl on the floor. Come back. It's pellets inside my bowl. I sit my cup down. It's pellets on the top of the cup, and they climbing upside—they climbing up the bars. Certain ones could climb up higher than others . . . . This is on a every-day basis. It's not happening just one day. Every day this going on. You look at the catwalk. It's nothing but black pellets everywhere down the catwalk.

Pl.'s Dep. at 54:22–55:17; *see* Pl.'s Resp. at 6. Traps such as sticky board and rodent boxes were placed on the tier to catch the rodents. Def.'s LR 56.1 ¶ 32. But, according to Plaintiff, "it was useless," and when the traps did catch a rodent, "[h]e might be sitting there for two weeks, and he stinking. He sitting up under a radiator in a box, and they ain't came and got him yet." Pl.'s Dep. at 56:19–21, 58:2–9.

Plaintiff also testified about mold and rusty fixtures in the Division 1 showers. Def.'s LR 56.1 ¶¶ 34–36. He described mold in the showers as looking like "geese feces had been just

4

smeared everywhere over the wall." Pl.'s Dep. at 59:23–60:1; Pl.'s Resp. at 6. Plaintiff, however, does not know if, in fact, the substance was mold. Def.'s LR 56.1 ¶ 38. Two showerheads also dripped rusty water, Def.'s LR 56.1 ¶ 36, and sometimes, when Plaintiff showered, the water coming out of the taps was brown. Pl.'s Dep. at 60:16–19.

Plaintiff testified that the tier (including the showers) was power washed every couple of months, "but not on a regular basis." Def.'s LR 56.1 ¶ 39, Pl.'s Dep. at 63:2–11. The power washing helped, but Plaintiff wished it had been done more frequently. *Id.* ¶ 40. Plaintiff and other detainees also sometimes cleaned the shower area themselves. *Id.* ¶ 37.

From January 2015 to April 2015, Plaintiff was housed in cell 11 in Division 6, tier 1N. Def.'s LR 56.1 ¶ 4. Plaintiff's primary complaint while in Division 6 concerned the temperature in his cell. Pl.'s Dep. at 36:8–37:5. According to Plaintiff, cell 11 was freezing. Def.'s LR 56.1 ¶ 5. For example, on two occasions, Plaintiff saw his breath while standing by his window. *Id.* ¶ 6; Pl.'s Resp. at 3. And ice chips formed in a glass of water when Plaintiff placed the glass on the window ledge. Pl.'s Resp. at 3; Pl.'s Dep. at 33:9–11. He attempted to keep the cold air from coming into his cell by placing a garbage bag, two sheets, and a blanket over the window, but some officers would not allow him to keep the make-shift insulation in place. Pl.'s Dep. at 17:7–23; *see* Pl.'s Resp. at 3.

Plaintiff had a uniform, a t-shirt, and a thermal shirt. Def.'s LR 56.1 ¶¶ 8–10; *see* Pl.'s Dep. at 18:10–16. He also had a sheet and a blanket, and correctional officers once passed out an extra, temporary blanket. Def.'s LR 56.1 ¶¶ 12, 13; *see also* Pl.'s Dep. at 21:19–24. Even so, Plaintiff experienced numbness in his extremities that he attributes to the cold and had to walk around and blow on his hands to keep warm. Def.'s LR 56.1 ¶¶ 20–21; Pl.'s Resp. at 7. He was allowed out of his cell from approximately 8:00 a.m. to 11:00 a.m. and then again from 3:00 p.m.

to 6:00 p.m. Pl.'s Dep. at 30:10–14; *see* Def.'s LR 56.1 ¶ 11. It was warmer outside his cell than inside his cell, but according to Plaintiff, it was still cold. Pl.'s Dep. at 31:11–14.

Dart presented evidence that engineers employed by the Department of Facilities Management check temperatures at the Jail daily and that they were doing so from January 2015 to April 2015. Def.'s LR 56.1 ¶ 47. The engineers take temperature readings three times each day from various places throughout the Jail, including Division 6, and maintain a log of their readings. *Id.* The temperature readings are taken from cells at the bottom and the top of each tower of cells, as well as from where air is discharged from the roof of the building. *Id.* ¶ 48. According to the Department of Facilities Management, if the readings at the first floor, the second floor, and the air discharged on the roof are all within the acceptable range, "then every cell in between would also be within the acceptable range." *Id.* Temperature logs from January 2015 to April 2015 show that temperature readings throughout Division 6, and the air discharged from the building, were always between 67 and 77 degrees. *Id.* ¶ 50.

Jail personnel also checked the temperature in Plaintiff's cell. Def.'s LR 56.1 ¶ 14. Plaintiff explained at his deposition that "[t]hey came in with a temperature gun and tried to check the cell a couple times." Pl.'s Dep. at 22:11–12. "[T]hey didn't shoot it at the wall where the window was at. They shot it at the wall opposite to the window." *Id.* at 27:14–17. Plaintiff also explained that the person measuring temperatures checked a couple other cells that were cold. *Id.* at 22:13–19. Plaintiff never saw the reading on the temperature meter, but questioned the accuracy of the device. *See id.* at 28:16–17; Def.'s LR 56.1 ¶ 15–16. Plaintiff, however, did not have a thermometer and does not know the actual temperature in his cell. Def.'s LR 56.1 ¶ 7.

Plaintiff never saw Sheriff Dart visit any of the living units. Def.'s LR 56.1 ¶ 43. Plaintiff never spoke with Dart or wrote him a letter about his living conditions. *Id.* ¶ 44.

6

Plaintiff experienced nothing more than the common cold while at the Jail. *See id.* ¶¶ 17–19, 41–42.

Plaintiff filed this federal lawsuit under 42 U.S.C. § 1983 against Cook County Sheriff Thomas Dart and the Cook County Department of Corrections concerning, among other things, a general lack of sanitation, rodents, mold, and the lack of heat in his cell. Pl.'s Compl., ECF No. 1. The case was immediately consolidated with other pending Cook County Jail conditions cases. *See* Order of 9/18/2014, ECF No. 4.

Plaintiff subsequently submitted an amended complaint against "CCDOC, Commander W. Thomas Division/Dept V1." Pl.'s Am. Compl., ECF No. 18. The allegations of the amended complaint concerned a general lack of sanitation, rodents, mold, rusty water, and lack of heat in cell 11. *Id.* Plaintiff also complained of sewage that overflowed into his cell. *Id.* at 4. After this case was deconsolidated from the Cook County Jail Division 3 cases, Plaintiff's amended complaint was allowed to proceed on claims based upon the alleged rodent infestation, lack of heat, and mold. *See* Order of 1/13/2016 at 2, ECF No. 17. Sheriff Dart, rather than "Commander W. Thomas," was identified as the proper defendant to this action because of the potentially systemic nature of the problems identified by Plaintiff and because the amended complaint contained no facts from which individual liability could be inferred against Commander Thomas. *See id.*

Defendant now moves for summary judgment in his favor and against Plaintiff.

**<u>Legal Standard</u>**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists if "the evidence is such that a reasonable jury

7

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

To survive summary judgment, the opposing party must go beyond the pleadings and designate specific facts showing the existence of a genuine issue for trial. *Anderson*, 477 U.S. at 256. Evidence submitted in opposition to summary judgment must be admissible at trial under the Federal Rules of Evidence, although attested testimony, such as that found in depositions or affidavits, will also be considered. *Scott v. Edinburg*, 346 F.3d 752, 759–60 & n.7 (7th Cir. 2003).

The Court's role in deciding a motion for summary judgment "is not to evaluate the weight of the evidence, to judge the credibility of witnesses, or to determine the truth of the matter, but instead to determine whether there is a genuine issue of triable fact." *Nat'l Athletic Sportswear, Inc. v. Westfield Ins. Co.*, 528 F.3d 508, 512 (7th Cir. 2008). The Court considers the facts in a light most favorable to the non-moving party. *Zuppardi v. Wal-Mart Stores, Inc.*, 770 F.3d 644, 649 (7th Cir. 2014). Summary judgment is appropriate if, on the evidence provided, no reasonable juror could return a verdict in favor of the non-movant. *Celotex Corp.,* 477 U.S. at 322; *Gordon v. FedEx Freight, Inc.*, 674 F.3d 769, 772–73 (7th Cir. 2012).

## **Analysis**

Detainees are entitled to live in conditions that do not amount to "punishment," *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), and are entitled to confinement under humane conditions that provide for their basic human needs, *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981).[1] Basic

---

[1] Detainee claims concerning living conditions are analyzed under the Fourteenth Amendment's Due Process Clause. *Smith v. Dart*, 803 F.3d 304, 309 (7th Cir. 2015). The protections for detainees under the

8

human needs include shelter, heat, clothing, sanitation, and hygiene items. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006); *Budd v. Motley*, 711 F.3d 840, 842–43 (7th Cir. 2013). Not all adverse conditions, however, rise to the level of a constitutional violation. To violate the Constitution, the condition must create a serious risk to an inmate's health or safety or be sufficiently prolonged so as to cause significant pain or discomfort. *Villagran v. Dart*, No. 14 C 10361, 2016 WL 7426132, at *3 (N.D. Ill. Dec. 23, 2016). Even when an individual condition is not serious enough to violate the Constitution, conditions may cumulatively do so "when they have 'a mutually enforcing effect that produces the deprivation of a single, identifiable human need.'" *Budd*, 711 F.3d at 842–43 (quoting *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

"The Constitution does not mandate comfortable prisons, but neither does it permit inhumane ones." *Snipes v. DeTella*, 95 F.3d 586, 590 (7th Cir. 1996) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994)). To establish a constitutional violation with respect to a detainee's living conditions, a plaintiff must be able to demonstrate both: (1) that the conditions were objectively so adverse that they deprived him "of the minimal civilized measure of life's necessities," and (2) that the defendant acted with deliberate indifference with respect to the conditions. *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008) (quoting *Farmer*, 511 U.S. at 834). "Deliberate indifference . . . means that the official knew that the inmate faced a substantial risk of serious harm, and yet disregarded that risk by failing to take reasonable measures to address it." *Townsend*, 522 F.3d at 773. Establishing that an official acted negligently does not suffice—"the inmate must show that the official received information from which the inference could be drawn that a substantial risk existed, and that the official actually drew the inference."

Due Process Clause are at least as broad as those for prisoners under the Eighth Amendment, so courts look to Eighth Amendment case law when addressing a detainee's claims. *Rice v. Corr. Med. Serv.*, 675 F.3d 650, 664 (7th Cir. 2012).

*Id.*

## I.     Conditions of Confinement

Plaintiff alleges that he was housed under unconstitutional conditions in three different housing units over eighteen months, and his allegations implicate two identifiable human needs: sanitation and heat.

### A.     Sanitation

Plaintiff testified at his deposition that rodents were present in each of his housing units. If Plaintiff is to be believed, Division 1, tier A2 was overrun with rodents, and the infestation was so severe that it was virtually impossible to avoid contact with the rodents and their droppings, which contaminated Plaintiff's cell, food, and dishes. Rodents were present in Divisions 5 and 6, but to a lesser extent, although mice had set up a nest in Plaintiff's door on Division 5.

"[A] prolonged pest infestation, specifically a significant infestation of cockroaches and mice, may be considered a deprivation sufficient to constitute a due process violation." *Sain v. Wood*, 512 F.3d 886, 894 (7th Cir. 2008). "Depending on how extensive the infestation of a prisoner's cell is, what the infesting pests are, what odors or bites or risk of disease they create . . . , and how long the infestation continues, a trier of fact might reasonably conclude that the prisoner had been subjected to harm sufficient to support a claim of cruel and unusual punishment." *Thomas v. Illinois*, 697 F.3d 612, 614 (7th Cir. 2012). Here, although Plaintiff was not bitten by a rodent, his description of the pest activity in Divisions 1 and 5—coupled with purported plumbing problems, excessive filth in the showers, and the alleged lack of disinfectant and other cleaning supplies—is sufficient to create a disputed issue of fact as to whether the living conditions in

Divisions 1 and 5 were constitutionally deficient.[2] *See, e.g., Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016) (concluding that insect infestation together with lack of cleaning supplies and broken window in cell could constitute unconstitutional condition of confinement); *Barbosa v. McCann*, No. 08 C 5012, 2011 WL 4062469, at *6 (N.D. Ill. Sept. 12, 2011) (finding that record evidence indicated inmate could prove insects and cockroaches were "rampant," there were so many that he could sleep only a few hours a night, and bugs or mice crawled on him and bit him); *Villagran*, 2016 WL 7426132, at *4 (finding that inmate's observation of five to ten mice a night, mice droppings in cell and showers, insects in cell and showers, mold in dayroom and showers, leaky cell toilet, and access to disinfectant only "once in a while" created disputed issue of fact whether inmate's confinement rose to level of constitutional violation). In addition, Plaintiff's assertion that he experienced "extreme mental anguish . . . with the rat urine and rat feces," Pl.'s Resp. at 4, is sufficient to satisfy the injury element of § 1983. *See Thomas*, 697 F.3d at 614 ("The potential psychological harm from living in a small cell infested with mice and cockroaches is pretty obvious.").

Plaintiff, however, concedes that he did not personally inform Defendant about the complained-of conditions, and thus Plaintiff cannot produce direct evidence showing that Defendant knew about the severity of the conditions Plaintiff experienced in Divisions 1 and 5. Nevertheless, the Court must construe the facts in a light most favorable to the non-movant, *see Zuppardi*, 770 F.3d at 649, and "[e]vidence that a senior official 'must have known' about the risk

---

[2] Plaintiff testified that his primary complaint about Division 6 concerned a lack of heat in his cell and characterized any other issues as "minor discrepancies." Pl.'s Dep. at 36:16–37:5. He identified no evidence showing that any sanitation in Division 6 rose to the level of a constitutional violation. Plaintiff also produced little evidence that the plumbing problems, dirty showers, and lack of cleaning supplies in Divisions 1 and 5 rose to the level of a constitutional violation by themselves, but in combination with the pest infestations, they exacerbated Plaintiff's ability to keep himself and his living space sanitary.

of physical or psychological harm resulting from the unsanitary conditions is sufficient for a jury to find deliberate indifference." *Gray*, 826 F.3d at 1008. Here, the unsanitary conditions described by Plaintiff occurred in more than one housing unit and thus suggest systemic problems at the Jail. Accordingly, Dart's knowledge of the problems may be inferred, at least at the summary judgment stage. *See Sanders v. Sheahan*, 198 F.3d 626, 629 (7th Cir. 1999) ("[D]efendants such as the Sheriff and the Director of the Jail can realistically be expected to know about or participate in creating systematic jail conditions" such as "nutritionally deficient food and inadequate hygiene."). Plaintiff therefore identified sufficient evidence to proceed against Dart in his individual capacity. *See id*. at 629 (inferring that personal liability may be established against senior jail official when complained-of condition exists in multiple units of the jail). The conditions described by Plaintiff also arguably show an informal policy or custom of allowing unconstitutional living conditions to persist at the Jail. Plaintiff therefore identified sufficient evidence to proceed against Dart in his official capacity under *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978). *See, e.g., Sanders*, 198 F.3d at 629.

The Jail's attempt to trap rodents and to power wash the showers periodically is some evidence that the Jail was not deliberately indifferent to the conditions in Division 1, but it is not enough at this juncture to establish a lack of deliberate indifference. *See Gray*, 826 F.3d at 1009; *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1431 (7th Cir. 1996) (explaining that extermination twice in sixteen months does not, by itself, negate a showing of deliberate indifference); *Bentz v. Hardy*, 638 F. App'x 535, 537–38 (7th Cir. 2016) (concluding that evidence of monthly spraying for pests did not exculpate defendants because an ineffective method of pest control may be evidence of deliberate indifference). Similarly, evidence that bleach was distributed to inmates once during an eighteen-month period does not demonstrate a lack of deliberate indifference.

Accordingly, Defendant Dart is not entitled to summary judgment on Plaintiff's claims concerning the pest infestation and sanitation issues in Divisions 1 and 5.

**B.     Heat**

By contrast, Plaintiff's claim about the heat in cell 11 in Division 6, Tier 1N involves a localized, rather than systemic, issue. Extreme cell temperatures may cause constitutional concern depending on the severity of the temperature, the duration of any excessively high or low temperature, whether the inmate has other means to protect himself from the temperature, and whether the inmate had to endure other uncomfortable or harsh conditions. *See Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997). Plaintiff, however, produced no evidence showing that Defendant knew about the heating issues in cell 11.

Evidence submitted by Defendant also demonstrates that engineers from the Department of Facilities Management monitored the temperatures at the Jail on a daily basis. Temperature logs from the relevant time period show that temperatures throughout Division 6 were always between 67 and 77 degrees. Plaintiff presented no evidence showing that Defendant received information to the contrary. Thus, there simply is no evidence from which the Court can infer that the heating problem of which Plaintiff complains was systemic or that Defendant was aware of a lack of heat in Plaintiff's cell. Defendant Dart therefore is entitled to summary judgment on Plaintiff's claims concerning Division 6.

**II.     Physical Injury**

Finally, Defendant argues that Plaintiff's lack of physical injury precludes his claims. While it is true that the Prison Litigation Reform Act, 42 U.S.C. § 1997e(e), bars prisoners from bringing suit based solely on mental or emotional injury, the Seventh Circuit has recognized that "[a]lthough § 1997e(e) would bar recovery of compensatory damages 'for' mental and emotional

13

injuries suffered, the statute is inapplicable to awards of nominal or punitive damages." *Gray*, 826 F.3d at 1007 (quoting *Calhoun v. DeTella*, 319 F.3d 936, 941 (7th Cir. 2003)). Thus, any claim for compensatory damages is barred, but if a jury finds that Plaintiff suffered psychological harm, he may recover nominal or punitive damages.[3]

## Conclusion

For the foregoing reasons, Defendant Dart's motion for summary judgment [36] is granted in part and denied in part. Summary judgment is granted on Plaintiff's claims concerning the conditions in Division 6. Summary judgment is denied on Plaintiff's claims concerning the conditions in Divisions 1 and 5. Status hearing is set for 3/19/18 at 9:30 a.m. Defense counsel should arrange for Plaintiff's participation by telephone and contact the courtroom deputy the day before with a call-in number.

**IT IS SO ORDERED.**                    ENTERED    3/9/18

*John Z. Lee*

_____

**John Z. Lee**
**United States District Judge**

---

[3] The Court also notes that the Plaintiff is not eligible for injunctive relief, as he is no longer incarcerated in the Jail. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) (explaining that the plaintiff's request for injunctive relief from a state facility was moot because he was no longer an inmate in the facility, "had not shown a realistic possibility that he will again be incarcerated in the same state facility," and therefore any relief "would be purely speculative in nature")